1
2
3
4
5
6
7

8          UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10

LARRY VICKERS, JR.,                )    1:08-CV-01961 LJO GSA HC
11                                 )
                Petitioner,        )    FINDINGS AND RECOMMENDATION
12                                 )    REGARDING RESPONDENT'S MOTION
                                   )    TO DISMISS
13      v.                         )
                                   )    [Doc. #12]
14                                 )
DERRAL G. ADAMS, et al.,           )
15                                 )
                Respondents.       )
16   _____)

17

18          Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

19   pursuant to 28 U.S.C. § 2254.

20                              **BACKGROUND**

21          Petitioner is currently in the custody of the California Department of Corrections pursuant to

22   a judgment of the Superior Court of California, County of Kern, following his conviction by jury

23   trial on February 21, 1996, of first degree murder, assault with a firearm, shooting from a motor

24   vehicle, and discharging a firearm from a motor vehicle. (LD 1.[1]) On June 21, 1996, Petitioner was

25   sentenced to serve an indeterminate term of 34 years and 4 months to life in state prison. (LD 1.)

26          Petitioner appealed the judgment to the California Court of Appeals, Fifth Appellate District.

27   On March 24, 1999, the appellate court affirmed the judgment. (LD 2.)  Petitioner filed a petition for

28   _____

[1]"LD" refers to the documents lodged by Respondent with his motion to dismiss.

1   review in the California Supreme Court. (LD 3.)The petition was denied on July 14, 1999. (LD 4.)

2        Petitioner filed fourteen post-conviction collateral challenges with respect to the judgment in

3   the state courts, all petitions for writ of habeas corpus, as follows:

4        1.   Monterey County Superior Court
              Filed: August 17, 1999[2];
5             Denied: January 3, 2000[3];

6        2.   California Court of Appeals, Fifth Appellate District
              Filed: April 26, 2000[4];
7             Denied: March 2, 2001;

8        3.   California Supreme Court
              Filed: May 9, 2001;
9             Denied: October 31, 2001;

10       4.   Kern County Superior Court
              Filed: June 20, 2002;
11            Denied: July 29, 2002;

12       5.   California Court of Appeals, Fifth Appellate District
              Filed: October 21, 2002;
13            Denied: September 11, 2003;

14       6.   California Supreme Court
              Filed: October 8, 2003;
15            Denied: September 15, 2004;

16       7.   Kern County Superior Court
              Filed: September 5, 2004;
17            Denied: October 6, 2004;

18       8.   Kern County Superior Court
              Filed: October 17, 2004;
19            Denied: February 7, 2005;

20       9.   California Court of Appeals, Fifth Appellate District
              Filed: March 3, 2005;
21            Denied: August 25, 2005;

22

23        [2]Pursuant to the mailbox rule set forth in Houston v. Lack, the Court deems the several habeas petitions filed on the
24   date Petitioner signed them and presumably handed them to prison authorities for mailing, as opposed to the date of their
     receipt by the court clerk, unless otherwise noted.  Huizar v. Carey, 273 F.3d 1220, 1222, (9th Cir. 2001), *citing* Houston v.
25   Lack, 487 U.S. 266, 276, 108 S.Ct. 2379, 2385 (1988).

26        [3]The petition was filed in Monterey County but then transferred to Kern County. The Kern County Superior Court
     issued the opinion denying the petition.

27        [4]The petition does not contain a proof of service; however, the petition bears a signature of February 28, 2000. It
28   is unreasonable to assume for purposes of the mailbox rule that the petition was mailed out on the date of this signature given
     the petition was actually filed on April 26, 2000. Therefore, the Court will consider the petition filed on April 26, 2000.

1   10.   <u>Kern County Superior Court</u>
          Filed: December 12, 2005;
2         Denied: January 26, 2006;

3   11.   <u>California Court of Appeals, Fifth Appellate District</u>
          Filed: April 5, 2006;
4         Denied: April 27, 2006;

5   12.   <u>California Supreme Court</u>
          Filed: September 25, 2006;
6         Denied: May 23, 2007;

7   13.   <u>California Supreme Court</u>
          Filed: May 31, 2007;
8         Denied: November 14, 2007;

9   14.   <u>California Supreme Court</u>
          Filed: January 9, 2008;
10        Denied: July 16, 2008.

11  (LD 5-35.)

12      On December 24, 2008, Petitioner filed the instant federal petition for writ of habeas corpus

13  in this Court. On April 28, 2009, Respondent filed a motion to dismiss the petition as being filed

14  outside the one-year limitations period prescribed by 28 U.S.C. § 2244(d)(1). Petitioner filed his

15  opposition to Respondent's motion to dismiss on June 3, 2009. Respondent filed a reply on July 30,

16  2009.

17                              **DISCUSSION**

18  <u>A.  Procedural Grounds for Motion to Dismiss</u>

19      Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a

20  petition if it "plainly appears from the petition and any attached exhibits that the petitioner is not

21  entitled to relief in the district court . . . ." Rule 4 of the Rules Governing Section 2254 Cases.

22      The Ninth Circuit has allowed respondents to file a motion to dismiss in lieu of an answer if

23  the motion attacks the pleadings for failing to exhaust state remedies or being in violation of the

24  state's procedural rules. <u>See</u>, <u>e.g.</u>, <u>O'Bremski v. Maass</u>, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule

25  4 to evaluate motion to dismiss petition for failure to exhaust state remedies); <u>White v. Lewis</u>, 874

26  F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural grounds to review motion to dismiss for

27  state procedural default); <u>Hillery v. Pulley</u>, 533 F.Supp. 1189, 1194 & n.12 (E.D. Cal. 1982) (same).

28  Thus, a respondent can file a motion to dismiss after the court orders a response, and the Court

1   should use Rule 4 standards to review the motion.  <u>See</u> <u>Hillery</u>, 533 F. Supp. at 1194 & n. 12.

2        In this case, Respondent's motion to dismiss is based on a violation of 28 U.S.C. 2244(d)(1)'s

3   one-year limitations period.  Because Respondent's motion to dismiss is similar in procedural

4   standing to a motion to dismiss for failure to exhaust state remedies or for state procedural default

5   and Respondent has not yet filed a formal answer, the Court will review Respondent's motion to

6   dismiss pursuant to its authority under Rule 4.

7   <u>B.  Limitation Period for Filing a Petition for Writ of Habeas Corpus</u>

8        On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

9   1996 (hereinafter "AEDPA").  The AEDPA imposes various requirements on all petitions for writ of

10  habeas corpus filed after the date of its enactment.  <u>Lindh v. Murphy</u>, 521 U.S. 320, 117 S.Ct. 2059,

11  2063 (1997); <u>Jeffries v. Wood</u>, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc), *cert. denied,* 118 S.Ct.

12  586 (1997).

13       In this case, the petition was filed on December 24, 2008, and therefore, it is subject to the

14  provisions of the AEDPA.  The AEDPA imposes a one-year period of limitation on petitioners

15  seeking to file a federal petition for writ of  habeas corpus.  28 U.S.C. § 2244(d)(1).  As amended,

16  § 2244, subdivision (d) reads:

17          (1)  A 1-year period of limitation shall apply to an application for a writ of habeas
         corpus by a person in custody pursuant to the judgment of a State court.  The
18       limitation period shall run from the latest of –

19              (A) the date on which the judgment became final by the conclusion of direct
         review or the expiration of the time for seeking such review;
20
                (B) the date on which the impediment to filing an application created by
21       State action in violation of the Constitution or laws of the United States is removed, if
         the applicant was prevented from filing by such State action;
22
                (C) the date on which the constitutional right asserted was initially recognized by
23       the Supreme Court, if the right has been newly recognized by the Supreme Court and made
         retroactively applicable to cases on collateral review; or
24
                (D) the date on which the factual predicate of the claim or claims presented
25       could have been discovered through the exercise of due diligence.

26          (2) The time during which a properly filed application for State post-conviction or
         other collateral review with respect to the pertinent judgment or claim is pending shall
27       not be counted toward any period of limitation under this subsection.

28  28 U.S.C. § 2244(d).

1   In most cases, the limitations period begins running on the date that the petitioner's direct

2   review became final.  In this case, the petition for review was denied by the California Supreme

3   Court on July 14, 1999. Thus, direct review concluded on October 12, 1999, when the ninety (90)

4   day period for seeking review in the United States Supreme Court expired. Barefoot v. Estelle, 463

5   U.S. 880, 887 (1983); Bowen v. Roe, 188 F.3d 1157, 1159 (9th Cir.1999); Smith v. Bowersox, 159

6   F.3d 345, 347 (8th Cir.1998).  Petitioner had one year commencing on October 13, 1999, until

7   October 12, 2000, absent applicable tolling, in which to file his federal petition for writ of habeas

8   corpus. Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir.2001). However, Petitioner delayed filing

9   the instant petition until December 24, 2008, over eight years beyond the due date.  Absent any

10   applicable tolling, the instant petition is barred by the statute of limitations.

11   C.  Tolling of the Limitation Period Pursuant to 28 U.S.C. § 2244(d)(2)

12   Title 28 U.S.C. § 2244(d)(2) states that the "time during which a properly filed application

13   for State post-conviction or other collateral review with respect to the pertinent judgment or claim is

14   pending shall not be counted toward" the one year limitation period.  28 U.S.C. § 2244(d)(2). In

15   Carey v. Saffold, the Supreme Court held the statute of limitations is tolled where a petitioner is

16   properly pursuing post-conviction relief, and the period is tolled during the intervals between one

17   state court's disposition of a habeas petition and the filing of a habeas petition at the next level of the

18   state court system. 536 U.S. 214, 215 (2002); see also Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir.

19   1999), cert. denied, 120 S.Ct. 1846 (2000). Nevertheless, state petitions will only toll the one-year

20   statute of limitations under § 2244(d)(2) if the state court explicitly states that the post-conviction

21   petition was timely or was filed within a reasonable time under state law. Pace v. DiGuglielmo, 544

22   U.S. 408 (2005); Evans v. Chavis, 546 U.S. 189 (2006). Claims denied as untimely or determined by

23   the federal courts to have been untimely in state court will not satisfy the requirements for statutory

24   tolling. Id.

25   *1.  Petitions One, Two and Three*

26   Petitioner filed his first state habeas petition on August 17, 1999 in the superior court. This

27   filing took place before the commencement of the statute of limitations. Respondent concedes the

28   statute of limitations was tolled during the pendency of this petition, from October 13, 1999, the date

1   the limitations period commenced, until January 3, 2000, the date the petition was denied.

2        Petitioner next filed a habeas petition in the appellate court on April 26, 2000. Respondent

3   contends that this interval of 113 days should not be tolled because Petitioner unduly delayed.

4   Petitioner argues the interval should be tolled because the appellate court did not opine that the

5   petition was untimely. Under Chavis, in the absence of an explicit state court finding of

6   untimeliness, the federal court must "examine the delay in each case and determine what the state

7   courts would have held in respect to timeliness." 546 U.S. at 198. In Chavis, the Supreme Court

8   determined that an unexplained delay of six months is far longer than the short period of time of 30

9   to 60 days that most states provide for filing an appeal. The Supreme Court concluded that such a

10  long period of time was unreasonable. Here, the delay of 113 days is twice the short period of time of

11  30 to 60 days provided by most states for filing an appeal. In addition, the petition submitted to the

12  appellate court is identical to the superior court petition. Indeed, it contains the same date of

13  August 12, 1999, and the same 44 pages of argument. Therefore, the delay of 113 days is clearly

14  unreasonable. Chavis, 546 U.S. at 201. Respondent is correct that the interval should not be tolled.

15  However, Respondent concedes the limitations period was tolled for the pendency of the second

16  petition until it was denied on March 2, 2001.

17       Petitioner then filed a habeas petition in the California Supreme Court on May 9, 2001.

18  Respondent also argues that the 67 day interval between the two petitions is unreasonable and should

19  not be tolled. On one hand, 67 days is just outside the 30 to 60 days normally granted by state courts

20  to file an appeal. On the other hand, as Respondent points out, the petition filed with the California

21  Supreme Court is identical to the appellate court petition.  A period of 30 to 60 days is more than

22  adequate for a prisoner to submit the identical petition to a higher court. Further, California only

23  allows ten days for a petitioner to file a *petition for review*.  Therefore, given the facts in this case,

24  the period of 67 days appears to be unreasonable and should not be tolled.  Nevertheless, in the grand

25  scheme, the instant federal petition is so untimely that even if the Court were to grant Petitioner

26  tolling for these 67 days, it would make no difference to the outcome. Accordingly, another 67 days

27  of the limitations period ran at the time the third petition was filed for a total of 180 days.

28  Respondent concedes that the limitations period was tolled for the time the third petition was

U.S. District Court
E. D. California          cd                                    6

1    pending until it was denied on October 31, 2001.

2              *2.  Petitions Four, Five, and Six*

3              Petitioner commenced a second round of collateral review on June 20, 2002, by filing a

4    habeas petition in the Kern County Superior Court. There can be no tolling for the interval between

5    the third petition and the fourth petition, because the fourth petition constituted a new round of

6    review. Hammerle v. Schriro, 495 F.3d 1069, 1075 (9th Cir.2007); Gaston v. Palmer, 447 F.3d 1165,

7    1166 (9th Cir.2006), *cert. denied*, 127 S.Ct. 979 (2007). In addition, Petitioner is not entitled to

8    statutory tolling for the time the fourth petition was pending, because the superior court specifically

9    determined the petition to be untimely. (LD 15.) The superior court stated, "[Petitioner] fails to

10   explain why [these issues] were not discovered before and raised in the prior Petition." (LD 15.)

11   Under Pace, the action was not "properly filed" for purposes of tolling. 544 U.S. at 414-415.

12             Likewise, Petitioner is not entitled to tolling for the intervals between the fourth, fifth and

13   sixth petitions, or during the pendency of the fifth and sixth petitions. The fifth and sixth petitions

14   were summarily denied without comment or citation to authority. In such cases, the federal court

15   must "look through" the summary dispositions to the last reasoned decision. Pham v. Terhune, 400

16   F.3d 740, 742 (9th Cir.2005); Shackleford v. Hubbard, 234 F.3d 1072, 1079 n.2 (9th Cir.2000), *citing*

17   Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). Thus, the fifth and sixth petitions are assumed to

18   have been denied on the same grounds as the fourth petition, which was for untimeliness.

19   Accordingly, Petitioner is entitled to no tolling for the second round of collateral review. With 185

20   days remaining (365-180), the limitations period expired on May 5, 2002. The instant federal

21   petition was not filed for another six and one-half years.

22             *3.  Petitions Seven through Fourteen*

23             The remaining state petitions were filed after the limitations period expired and therefore

24   cannot serve to toll the period. The statute of limitations cannot be revived once it has expired.

25   Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir.2003); Green v. White, 223 F.3d 1001 (9th

26   Cir.2000). Thus, the instant petition is untimely by six and one-half years.

27   D.  Equitable Tolling

28             The limitations period is subject to equitable tolling if the petitioner demonstrates: "(1) that

1   he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his

2   way." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); see also Irwin v. Department of Veteran

3   Affairs, 498 U.S. 89, 96 (1990); Calderon v. U.S. Dist. Ct. (Kelly), 163 F.3d 530, 541 (9th Cir. 1998),

4   citing Alvarez-Machain v. United States, 107 F.3d 696, 701 (9th Cir. 1996), cert denied, 522 U.S.

5   814 (1997). Petitioner bears the burden of alleging facts that would give rise to tolling. Pace, 544

6   U.S. at 418; Smith v. Duncan, 297 F.3d 809 (9th Cir.2002); Hinton v. Pac. Enters., 5 F.3d 391, 395

7   (9th Cir.1993).

8          In his opposition, Petitioner argues he should be excused from the statute of limitations for

9   the following reasons: 1) Delayed receipt of state transcripts; 2) Security policy instituted at prison

10  created an impediment to timely filing; and 3) Placement in administrative segregation deprived

11  Petitioner of his legal property.

12         First, Petitioner claims he did not receive his appellate record until April 2000, and this wait

13  caused him substantial delay in filing his fourth habeas petition. Courts have generally held that

14  delays in obtaining transcripts do not warrant equitable tolling. Gassler v. Bruton, 255 F.3d 492, 495

15  (8th Cir.2001); Lloyd v. Van Natta, 296 F.3d 630, 634 (7th Cir.2002); Jihad v. Hvass, 267 F.3d 803,

16  806 (8th Cir.2001); Fadayiro v. U.S., 30 F.Supp.2d 772, 779-80 (D.N.J. 1998). In Gassler, the Eight

17  Circuit stated:

18         [W]e understand petitioner's desire to have a transcript before filing for post-conviction
           relief. Possession of a transcript, however, is not a condition precedent to the filing of such
19         proceedings. A petition seeking collateral relief could have been filed, following which, if
           necessary for decision of the issues raised, the court could have ordered production of the
20         transcript.

21  255 F.3d at 495.

22         In any case, the claims brought by Petitioner in his second round of collateral relief were

23  known to him during his prosecution, and did not require transcripts. Petitioner alleged: 1)

24  Ineffective assistance of counsel due to failure to request instructions on lesser included offenses of

25  murder and failure to investigate facts and law; 2) Trial court's failure to sua sponte instruct on lesser

26  included offenses of murder and to provide complete instructions; and 3) Trial court improperly

27  determined that a witness was unavailable, thereby admitting the witness's testimony. Petitioner's

28  presence at trial obviated the need for transcripts to raise these claims.  Moreover, Petitioner unduly

1  delayed even after receiving the transcripts. He received them in April of 2000, but he failed to

2  present his claims for another two years until June 20, 2002. (LD 36.) Clearly, he has not shown the

3  lack of transcripts to be an extraordinary circumstance which prevented him from filing his claims,

4  nor has he demonstrated diligence.

5         Next, Petitioner alleges a security policy was implemented in December of 1999 due to the

6  attempted murder of a correctional officer which "systematically denied law library access to all

7  prisoners without a court ordered deadline." See Opposition at 6. Petitioner claims this policy

8  remained in effect until he was transferred to another institution in October of 2005. Id. The Ninth

9  Circuit has stated that equitable tolling may be available based on a denial of access to legal

10 materials and the law library. Lott v. Mueller, 304 F.3d 918, 925 (9th Cir.2002). However, Petitioner

11 must still demonstrate under the facts that the circumstances in his case were extraordinary and did

12 in fact prevent him from timely complying. Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir.1999). In

13 this case, Petitioner fails to do so. As Respondent notes, Petitioner's claim is completely belied by

14 the fact that he filed nine of his fourteen petitions during this time period. Additionally, Petitioner

15 provides no evidence of such a security policy being in effect for those five years. He provides a

16 copy of a November 15, 2001, inmate appeal which was partially granted; Petitioner was advised to

17 "submit a request to physically access the legal library to Mr. Burk and you'll be placed on the ducat

18 list." See Opposition at 27. This demonstrates that Petitioner may have had difficulties accessing the

19 law library for only the first two months of the limitations period, but there is no evidence that he

20 could not do so beyond that date. Moreover, Petitioner had access using the institution's paging

21 system, a fact he admits in one of his state habeas petitions. (LD 16.) Thus, Petitioner's

22 circumstances are not extraordinary but are very similar to those shared by most inmates.

23        Last, Petitioner complains that his placement in administrative segregation ("ad-seg") on

24 October 8, 2001, through May 20, 2002, prevented him from accessing his legal property.

25 Petitioner's claim is without merit on several bases. For one thing, he admits a property officer did

26 provide him with legal materials shortly after his placement. See Opposition at 6-9. Second,

27 Petitioner conceded in his fifth state habeas petition that his legal materials were returned to him on

28 December 21, 2001, after he filed an inmate appeal form. (LD 16, 37.) At most, he was without his

1  legal materials for only the first two months. Third, his placement in ad-seg was completely his own

2  doing. Petitioner blames his placement in ad-seg on the prison, alleging he was illegally placed in ad-

3  seg on a weapons possession charge that was dismissed for lack of evidence, but this contention is a

4  complete misrepresentation of the facts. According to the Rules Violation Report, two correctional

5  officers observed Petitioner holding his left thigh area with his left hand. (LD 38.) The officers then

6  ordered him to "Get on the wall." (LD 38.) Petitioner turned and ran. (LD 38. )The officers gave

7  chase and ordered him to "Get down." (LD 38.) Petitioner was then observed pulling an inmate-

8  manufactured deadly weapon out of his altered gray sweat pants. (LD 38.) As he approached a urinal,

9  he threw the object in and tried to flush it down. (LD 38.) The weapon was recovered and described

10  as having a piece of metal five inches in length sharpened to a point, with a plastic handle, and

11  having a sheath made of paper and masking tape. (LD 38.)

12       The Court has concerns about Petitioner's credibility  when he refers to a memorandum

13  prepared by the Investigative Services Unit ("ISU") that found the incident did not meet the

14  minimum requirements for prosecution by the district attorney because a weapon had not been

15  located. See Opposition, Exh. 1. He claims that in spite of this finding, he was "illegally placed in

16  ad-seg." See Opposition at 7. This appears to be less than truthful. The memorandum he attaches was

17  voided by the ISU and a subsequent memorandum was prepared showing the case was accepted for

18  prosecution by the Monterey County District Attorney's Office. (LD 38.) Indeed, on March 13, 2002,

19  Petitioner pleaded guilty to possession or manufacture of a weapon while confined in a correctional

20  institution and was sentenced to four years in prison. (LD 38.) In addition, on March 29, 2002, an

21  institutional hearing was held and Petitioner was found guilty of possessing a deadly weapon. (LD

22  38.) For these reasons, Petitioner should not be granted any equitable tolling for the time he was in

23  ad-seg. Petitioner was in possession of his legal property for most of that time, and he bore the

24  responsibility for his ad-seg placement because he committed a crime.

25  E.  Later Start Date Pursuant to 28 U.S.C. § 2244(d)(1)(C)

26       Petitioner contends that the Court is not precluded from reviewing ground seven of his

27  petition, because of § 2244(d)(1)(C)'s provision that the statute of limitations begins to run on the

28  date a constitutional right is newly recognized by the Supreme Court and made retroactively

1   applicable to cases on collateral review. He alleges the Supreme Court's decision in <u>Crawford v.</u>

2   <u>Washington</u>, 541 U.S. 36 (2004) established a new rule that was made retroactively applicable by

3   <u>Bockting v. Bayer</u>, 399 F.3d 1010 (9th Cir.2005).

4       While it is true that the Ninth Circuit did hold in <u>Bockting</u> that <u>Crawford</u> was a new rule that

5   was retroactively applicable to cases on collateral review, the Ninth Circuit was reversed by the

6   Supreme Court in <u>Whorton v. Bockting</u>, 549 U.S. 406 (2007).  In <u>Whorton</u>, the Supreme Court

7   determined that <u>Crawford</u> established a new rule, but that the rule was not retroactively applicable

8   because it was not a watershed rule of criminal procedure. Accordingly, Respondent is correct that

9   Petitioner is not entitled to a later start date under § 2244(d)(1)(C).

10  <u>F.  Later Start Date Pursuant to 28 U.S.C. § 2244(d)(1)(D)</u>

11      Petitioner also claims to have acquired newly discovered evidence which entitles him to a

12  later start date under 28 U.S.C. § 2244(d)(1)(D). He points to a declaration purportedly made by

13  James Oliver, the murder victim's brother, as well as some documents which he claims show the

14  existence of an undisclosed third bullet wound.

15      Title 28 U.S.C. § 2244(d)(1)(D) states that the limitation period shall run from "the date on

16  which the factual predicate of the claim or claims presented could have been discovered through the

17  exercise of due diligence."  The objective standard in determining when time begins to run under

18  Section 2241(d)(1)(D) is "when the prisoner knows (or through diligence could discover) the

19  important facts, not when the prisoner recognizes their legal significance."  <u>Hasan v. Galaza</u>, 254

20  F.3d 1150 (9th Cir.2001), *quoting*, <u>Owens v. Boyd</u>, 235 F.3d 356, 359 (7th Cir.2000).  Petitioner

21  claims in his opposition to Respondent's motion that the factual predicate for the instant claims did

22  not become known until he acquired James Oliver's February 14, 2004, declaration. (LD 22: Ex. A.)

23  In his declaration, Oliver states he had an altercation with Petitioner prior to the shooting incident.

24  He claims he and others chased Petitioner and Petitioner's friends, but Petitioner escaped. He further

25  claims Petitioner returned only after he and others assaulted Shondell Ross, at which time a shootout

26  occurred. He states he did not witness Petitioner shooting the victim, and states his testimony was

27  based on what others told him. He asserts he was never questioned by the prosecution or defense

28  about the shooting incident.

1    As discussed above, the relevant trigger date under § 2244(d)(1)(D) is when Petitioner knew

2    the relevant facts, or could have discovered them through due diligence, not when he recognized

3    their legal significance. Respondent correctly argues that Petitioner, having been an active participant

4    in both the earlier incident as well as the shooting incident, knew the relevant facts. The facts

5    provided by Oliver would have only confirmed what Petitioner already knew. Also, Oliver testified

6    that he did not have personal knowledge that Petitioner shot the victim. (LD 39: 316.) Thus, the

7    declaration offers nothing new.  In light of these facts, Petitioner is not entitled to a later start date

8    based on Oliver's declaration.

9    Petitioner also claims that newly discovered evidence of a third gunshot wound qualifies for a

10   later start date. Petitioner states that he researched the record and "discovered that one of [the

11   victim's] three wounds was described as a small flesh wound by the coroner, distinguishing it from

12   the other two wounds." See Opposition at 10. He alleges that this distinction showed the victim was

13   struck by different calibers of bullets; therefore, at least two people shot the victim. Id.

14   His claim for a later start fails again. As argued by Respondent, this evidence was contained

15   in the Clerk's Transcript on Appeal and was therefore available to Petitioner at the very latest in

16   April of 2000. Therefore, only Petitioner can be blamed for his failure to timely research and

17   discover these facts. As stated above, the statute of limitations runs from the time the facts were

18   known or could have been discovered, not from the time Petitioner discovered their legal

19   significance.  Thus, Petitioner is not entitled to tolling under 28 U.S.C. § 2241(d)(1)(D).

20   G.  Actual Innocence

21   Petitioner claims he should be excused from the statute of limitations defense because he is

22   actually innocent in light of Oliver's declaration and the third wound evidence.

23   Neither the Supreme Court nor the Ninth Circuit has addressed whether there is an actual

24   innocence exception to a violation of section 2244(d)'s limitation period. But even if the Court were

25   to conclude that an actual innocence exception to a violation of the limitations period exists,

26   Petitioner has not met the standard.  Petitioner must show that the alleged constitutional error "has

27   probably resulted in the conviction of one who is actually innocent."  Bousley v. United States, 523

28   U.S. 614, 623 (1998), quoting, Murray v. Carrier, 477 U.S. 478, 496 (1986).   Petitioner must

1    demonstrate that in light of the evidence no reasonable juror would have found him guilty. <u>Schlup v.</u>

2    <u>Delo</u>, 513 U.S. 298, 329 (1995).  Petitioner presents no such evidence in this case.

3          First, Oliver's declaration is not credible and offers nothing to weaken the prosecution's case.

4    In light of Petitioner's various misrepresentations in his opposition and the apparent retraction by

5    Oliver of his sworn trial testimony, the declaration is highly suspect. Moreover, the declaration does

6    not undermine the prosecution's case. Oliver avers that the prosecution intentionally left out

7    pertinent information so that Petitioner would be found guilty. (LD 22: Exh. A.) Respondent

8    correctly argues that this statement is speculative and conclusory. Oliver's declaration fails to state

9    what pertinent facts were left out and how this would ensure Petitioner would be found guilty. As to

10   the shootout he refers to in the declaration, Oliver fails to name the "five shooters." <u>Id</u>. Oliver also

11   fails to describe the shootout that occurred in any detail. <u>Id</u>. In addition, his recollection of the facts

12   surrounding the shootout do not differ greatly from the facts he testified to at trial. Petitioner's

13   defense at trial was a multiple shooter theory, and Oliver testified that he did not witness Petitioner

14   shoot the victim. (LD 39: 316.) He testified he heard shots and turned to see Petitioner firing his gun,

15   but the victim was already lying in the street. (LD 39: 308-09.) Oliver testified he did not see who

16   Petitioner was shooting. In his declaration, Oliver does not contradict this testimony. He declares

17   that he did not have personal knowledge that Petitioner shot the victim.

18         Second, the third bullet wound evidence does not prove Petitioner is actually innocent of the

19   murder. Respondent correctly points out that the evidence of a third bullet wound was not initially

20   noted by the attending physician. (LD 22: Att. 1 at pp. 1-2.) However, the two bullet wounds that

21   were noted were non-survival wounds: one being an entry wound to the right rear of the head and

22   exiting the left rear of the head; and the other being an entry wound to the right side of the neck and

23   exiting the left side of the neck. (LD 22: Att. 1 at p. 1.) The third bullet wound was noted in the

24   autopsy report, but that wound was described as a non-fatal flesh wound. (LD 22: Att. 1 at

25   unnumbered p. 19.) This third bullet wound was not the cause of the victim's death; the fatal shot

26   was the first wound described by the attending physician. Therefore, this third wound offers nothing

27   to exonerate Petitioner of murder. Moreover, there was simply no evidence of a second shooter or

28   second weapon. During the murder investigation, five shell casings were recovered and all were .9-

1   mm. (LD 22: Att. 1 at unnumbered p. 11.)

2       Rather, the evidence of Petitioner's culpability was overwhelming. Multiple witnesses

3   described how Petitioner ran to the scene of a fistfight, pulled out a gun, leveled the gun at the

4   victim's head, and fired multiple times.  Petitioner fails to demonstrate that in light of the evidence

5   no reasonable juror would have found him guilty.  <u>Schlup</u>, 513 U.S. at 329.

6   H.  Exhaustion Requirement as Reason to Excuse Untimeliness

7       Last, Petitioner claims the exhaustion requirement set forth in 28 U.S.C. § 2254(b)(1)(A)

8   excuses him from any allegation of untimeliness, because he was properly pursuing all state

9   remedies prior to presenting his claims in federal court. He claims therefore that all of the time he

10  spent exhausting his claims, from his first petition to his fourteenth, should be tolled. As Respondent

11  correctly argues, 28 U.S.C. § 2244(d)(2) already takes the exhaustion requirement into account by

12  allowing for tolling during the time a properly filed state post-conviction action is pending. In

13  addition, Petitioner did not progress through the state courts in an orderly and timely fashion. Several

14  petitions were dismissed as improperly filed, and others were dismissed as procedurally defaulted.

15  Therefore, the exhaustion requirement does not excuse Petitioner's delay in bringing his federal

16  petition.

17                          **RECOMMENDATION**

18      Accordingly, the Court hereby RECOMMENDS that Respondent's motion to dismiss be

19  GRANTED, and the petition for writ of habeas corpus be DISMISSED WITH PREJUDICE for

20  violating the statute of limitations. The Court also RECOMMENDS that Petitioner's motion to

21  amend be DENIED.

22      These Findings and Recommendations are submitted to the Honorable Lawrence J. O'Neill,

23  United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and

24  Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of

25  California.

26      Within thirty (30) days after being served with a copy, any party may file written objections

27  with the court and serve a copy on all parties.  Such a document should be captioned "Objections to

28  Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and

1   filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the objections.

2   The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The

3   parties are advised that failure to file objections within the specified time may waive the right to

4   appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

5

6        IT IS SO ORDERED.

7   **Dated:   August 18, 2009**            **/s/ Gary S. Austin**
                                  UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28